1

```
1                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
2                     ALEXANDRIA DIVISION

3  PATTI TOOHEY,                    )  Case 1:13-cv-01059
                                    )
4                 Plaintiff,        )
                                    )
5         v.                        )  Alexandria, Virginia
                                    )  March 14, 2014
6  MANTECH INTERNATIONAL            )  10:24 a.m.
   CORPORATION,                     )
7                                   )
                  Defendant.        )
8  _____ )  Pages 1 - 11

9
       EXCERPT OF THE HONORABLE ANTHONY J. TRENGA'S RULING
10

11  APPEARANCES:

12  FOR THE PLAINTIFF:

13       JAMES P. McEVILLY, III, pro hac vice
         SHLANSKY LAW GROUP, LLP
14       1000 North West Street, Suite 1200
         Wilmington, Delaware  19801
15       (302) 256-5011

16       LORI J. SEARCY, ESQUIRE
         SEARCY BUSINESS LITIGATION AND EMPLOYMENT LAW, LLC
17       5803 Rolling Road, Suite 201
         Springfield, Virginia  22152
18       (703) 644-1200

19  FOR THE DEFENDANT:

20       MATTHEW F. NIEMAN, ESQUIRE
         MEREDITH F. BERGESON, ESQUIRE
21       JACKSON LEWIS, LLP
         10701 Parkridge Boulevard, Suite 300
22       Reston, Virginia  20191
         (703) 483-8300
23


24


25      COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

1            THE COURT:   I've reviewed the motion and the

2     opposition and the exhibits.   In this Title 7 case, the

3     plaintiff alleges that her employment was terminated in

4     retaliation for her raising concerns about racial

5     discrimination and promotions and hiring at the

6     company.   The case is before the Court on defendant's

7     motion for summary judgment.

8            In the face of defendant's motion,

9     plaintiff's initial burden is to come forward with

10    evidence sufficient to establish a *prima facie* case.

11    In that regard, the plaintiff must first show that she

12    engaged in protected activity; second, that ManTech,

13    the defendant, took an adverse employment action

14    against her; and third, that there exists a causal

15    connection between her protected activity and the

16    asserted adverse action.

17           Here there's no issue that plaintiff's

18    termination constituted an adverse employment action;

19    rather, the defendant claims that the evidence is

20    insufficient as a matter of law to establish either

21    that the plaintiff had engaged in protected activity or

22    that her termination was causally related to any

23    protected activity that she may have engaged in

24    proffering a nondiscriminatory reason for her

25    termination.

1    In evaluating the record for its sufficiency

2  to withstand defendant's motion for summary judgment,

3  the Court must view all of the facts together with any

4  reasonable inferences in a light most favorable to the

5  plaintiff.  When viewed in that light, the record

6  briefly summarized shows that at all material times the

7  plaintiff was employed by the defendant as vice

8  president of contracts for Mission, Cyber, Technology

9  Solutions, otherwise known as MCTS, which is a division

10 of ManTech, and that her direct supervisor was that

11 division's president, William Varner.

12    As alleged by the plaintiff, the events that

13 resulted in her termination issued out of her

14 unsuccessful attempts to promote minority employees

15 within her department and her expressed concerns over

16 her inability to obtain those promotions for her

17 employees while white employees in other departments

18 were receiving promotions, all during a time when the

19 company refused the promotion of her minority employees

20 on the grounds of a companywide freeze on promotions.

21    The immediate events that led up to

22 plaintiff's termination on May 1, 2012, began on

23 April 11, 2012, when one of the minority employees in

24 her department, who held the position of senior

25 contracts manager, complained to the plaintiff about

1 her lack of advancement and specifically her inability

2 to be promoted to the position of director of

3 contracts, a role that she had been performing as the

4 acting director and for which the plaintiff had

5 recommended that she be promoted as the actual

6 director.

7           This employee raised more general concerns

8 about racial discrimination at ManTech both as to

9 herself individually, as well as other employees or

10 applicants for jobs at ManTech, including the lack of

11 ethnic and racial minorities at the higher levels of

12 corporate management and, in general, her perception

13 that there existed at ManTech a disparate treatment of

14 minority employees.

15          Much of these concerns centered on the

16 actions of the vice president of finance, who had

17 approval power over hires and promotions within

18 plaintiff's department and her decisions to refuse the

19 promotion of minority employees in plaintiff's

20 department while approving the promotion of white

21 employees in her own department.

22          On April 12, the minority employee who had

23 met with the plaintiff provided 90 days notice of her

24 resignation.  That written notice of her resignation

25 was sent to the plaintiff and also the head of the

1   human resources department, among others.  In her

2   resignation notice, she raised issues that she had

3   previously raised with the plaintiff; although, she did

4   not frame them in racial terms or in terms of

5   discrimination.

6          On April 16, 2012, the plaintiff met with

7   Mr. Varner, the president of her division and her

8   direct supervisor, and also the head of the human

9   resources department about the concerns of the employee

10  who had resigned.  At that meeting, the plaintiff

11  reviewed a number of issues pertaining to hiring

12  practices, including those raised by the resigning

13  employee, including the lack of minorities and women in

14  the executive ranks.  Much of the discussion, again,

15  focused on the actions and perceived attitudes within

16  the finance department that controlled hiring and

17  promotions.

18         The plaintiff also presented a letter that

19  she had prepared.  In that letter, she stated that she

20  had concerns that required their attention and then

21  listed in detail what she perceived as issues

22  concerning disparate treatment with respect to

23  promotions and hiring, particularly focusing on the

24  actions of the person who had authority over those

25  decisions.  She opined that further investigation was

1  needed.   In that regard, she stated, quote, I think we

2  need to look into this and treat it properly, close

3  quote, and that it was her sense that, quote, there may

4  be the possibility of an issue here, close quote.

5  Overall, she requested further discussion in working

6  with Mr. Varner and Mr. Painter to, in her words,

7  quote, get the facts and figure out what we can do to

8  further the company's best interest, closed quote.

9          On April 19, she met with the defendant's

10 general counsel to discuss her concerns, and on

11 April 27, the employment of the minority employee who

12 had tendered a resignation in 90 days was terminated.

13         On May 1, 2012, the plaintiff was called to

14 the office of Mr. Varner, her direct supervisor, and

15 told that her employment was being terminated effective

16 within 30 days.  On May 29, 2012, she was, in fact,

17 terminated.  During the May 1 meeting, plaintiff was

18 told that she was being terminated for performance

19 reasons; although, performance issues had never been

20 previously raised with her.  She had within several

21 months prior to the May 1 meeting received performance

22 bonuses.  Her termination without notice of performance

23 issues violated company policy, and she had only a few

24 days before been introduced to a major customer as its

25 ManTech contact.

1          The first issue is whether the plaintiff had

2     engaged in protected activity.   Title 7 protects

3     employees who oppose any unlawful employment practice

4     under Title 7.   Plaintiff does not need to engage in a

5     formal process of adjudicating a discrimination claim,

6     and a protected activity may consist of simply voicing

7     one's opinion in order to bring attention to an

8     employer's discriminatory activities.   It allows an

9     employee to complain without fear of retaliation about

10    suspected improper practices.

11         The defendant claims that the plaintiff did

12    not engage in protected activity because she was simply

13    doing her job as the senior vice president for

14    contracts when she reported the complaints of one of

15    her employees referencing the so-called manager rule

16    adopted in other circuits.

17         The Court has considered the manager rule and

18    whether it is consistent with Fourth Circuit

19    jurisprudence and concludes that even if the Court were

20    to subscribe to the manager rule, the evidence here

21    when viewed in a light most favorable to the plaintiff

22    would not preclude her claim as a matter of law that

23    she engaged in protected activity.   She was the head of

24    contracts.   Even if it were her job to report employee

25    complaints, it was not her job to investigate or

1  evaluate those complaints or weigh in on whether there

2  existed unlawful employment practices issuing out of

3  other departments.

4           For these reasons, the Court concludes that

5  the record when viewed most favorably to the plaintiff

6  does not allow the Court to conclude as a matter of law

7  that plaintiff did not engage in protected activity and

8  denies the motion for summary judgment on those

9  grounds.

10          As I indicated, there is no issue that the

11  plaintiff suffered an adverse employment action when

12  she was terminated.  The only issue is whether the

13  record when viewed most favorable to the plaintiff is

14  insufficient as a matter of law to establish that her

15  termination was causally related to her protected

16  activity.  Here the adverse employment action occurred

17  within a month of her protected activity, and under

18  Fourth Circuit precedent, an inference of causal

19  connection may be raised based on that temporal

20  proximity.

21          There is also evidence that will be discussed

22  in a moment with respect to the issue of pretext from

23  which a causal connection may be inferred.  For these

24  reasons, the Court finds that the plaintiff has

25  presented sufficient evidence to establish a *prima*

1  *facie* case.

2         The defendant responds by asserting what they

3  contend is a nondiscriminatory reason for her

4  termination, which under the *McDonnell Douglas* rubric

5  requires the plaintiff to come forward with evidence

6  that would allow a fact finder to conclude that the

7  facially nondiscriminatory reason is a pretext for

8  retaliation.

9         Here the defendant's claim that the plaintiff

10 was terminated for performance reasons does constitute

11 a facially nondiscriminatory reason for her

12 termination, which would preclude plaintiff's claim

13 absent sufficient evidence that such a reason was

14 simply a pretext for a retaliatory discharge.

15        Here the record when viewed most favorably to

16 the plaintiff establishes facts which would allow a

17 fact finder to conclude that the proffered

18 nondiscriminatory reason, based on performance

19 deficiencies, was, in fact, a pretext for retaliation

20 for protected activity, a temporal proximity of the

21 protected activity, the lack of any prior notice to the

22 plaintiff of any performance issues, the violation of

23 company policy in terminating plaintiff's employment

24 without any such notice, the actions favorable to the

25 plaintiff by Mr. Varner, the plaintiff's immediate

1  supervisor who terminated her, and those activities in

2  the several months that preceded her being informed of

3  her termination, all of which reflected his confidence

4  in her and her good performance, which includes

5  substantial bonuses, her introduction just days before

6  the protected activity to a major company customer all

7  undercut the credibility of the reasons now proffered

8  for her termination.

9          For these reasons, the Court concludes that

10  the record is insufficient to find that the defendant

11  is entitled to judgment as a matter of law, and its

12  motion for summary judgment will be denied.  The Court

13  will issue an order.

14          All right.  Thank you.  Counsel is excused.

15          MR. NIEMAN:  Your Honor --

16          THE COURT:  Yes.

17          MR. NIEMAN:  -- two questions.  There were

18  three aspects alleged for retaliation.  The termination

19  was one.  The other two were the alleged comments to

20  Ms. Hickok and the alleged e-mail meeting request to

21  CSC.

22          THE COURT:  Right.

23          MR. NIEMAN:  They appear to have been

24  conceded.  Are they still alive for trial purposes?

25          THE COURT:  The Court has not ruled on those.

1   The Court will reserve on those pending the evidence at

2   trial.

3            MR. NIEMAN:  The other question is regarding

4   the protected activity.  There are two varieties,

5   participation and opposition.  Are both theories still

6   viable for trial or only the opposition?

7            THE COURT:  Well, I think both theories are

8   still viable.  Clearly, there's enough on oppositional

9   activity, and that was the focus of the Court's

10  decision.  I have not ruled definitively on anything

11  else.

12           MR. NIEMAN:  Thank you, Your Honor.

13           THE COURT:  All right.  Thank you.

14           MR. McEVILLY:  Thank you, Your Honor.

15           ------------------------------------
                      Time:  10:35 a.m.
16

17

18

19

20

21

22      I certify that the foregoing is a true and

23   accurate transcription of my stenographic notes.

24
                                    /s/
25                          Rhonda F. Montgomery, CCR, RPR


         Rhonda  F.  Montgomery   OCR-USDC/EDVA   (703) 299-4599